UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| SHABBIR A. ABBAS, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civ. Action No: 3:20-cv-14144-GC <br><br> **MEMORANDUM OPINION AND ORDER** |

CASTNER, District Judge

**THIS MATTER** comes before the Court on the appeal by claimant Shabbir A. Abbas ("Claimant") of the final decision of the Commissioner of Social Security (the "Commissioner") determining that he is not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and, having considered the submissions of the parties without oral argument, pursuant to Local Civil Rule 9.1(b), finds that the Commissioner's decision will be **AFFIRMED IN PART AND REMANDED IN PART**.

**I.     BACKGROUND**

This appeal arises from Claimant's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f, alleging disability beginning December 31, 2014. (R. at 19, ECF No. 9-2.) Claimant is a thirty-year old male, who has not engaged in substantial gainful activity since July 5, 2016. (R. at 21; Claimant Br. 11, ECF No. 12.) Claimant suffers from degenerative joint disease secondary to fracture of the left femur and right ankle, degenerative disc disease, and obesity. (R. at 21–22; *see also* Claimant's Br. 2.) In December 2014, he was in a motor vehicle accident, where he sustained a bimalleolar fracture

dislocation of the right ankle, a closed shaft fracture of the left femur, and a left knee laceration. (R. at 23, 263.) His discharge diagnoses included a concussion, right ankle fracture, left knee laceration, left femur fracture, left toe fractures, and morbid obesity. (R. at 266.) Claimant underwent surgery and physical therapy for the ankle fracture, which persisted into 2018. (R. at 400–416.) Evidence of Claimant's degenerative disc disease began to appear around December 2014. (R. at 260–329, 361–378.) Claimant also suffers from morbid obesity, with Body Mass Indices (BMI's) of 50.30, 42.30, 53.60, and 51.20, recorded in 2014, 2015, 2017, and 2018, respectively. (*See* R. at 362, 332, 395–399, 403.)

Claimant filed an application for SSI on July 5, 2016, alleging disability beginning on December 31, 2014. (R. at 19.) The application was denied initially on September 19, 2016 and on reconsideration on April 6, 2017. (*Id.*) Claimant filed a written request for a hearing on May 16, 2017. (*Id.*) The hearing was held before an Administrative Law Judge (the "ALJ") on February 1, 2019. (*Id.*) Claimant testified at the hearing and was represented by counsel. (*Id.*) A vocational expert, Rocco J. Meola (the "VE"), also testified. (R. at 19, 62–66, 247–250.) On March 26, 2019, the ALJ issued a decision finding that Claimant was "not disabled" and thus, not entitled to SSI. (R. at 28.) Plaintiff sought review of the decision from the Appeals Council, which was denied on August 13, 2020. (R. at 1–4.) On October 8, 2020, Claimant filed this appeal. (ECF No. 1.)

## II. LEGAL STANDARDS

### A. *Disability Determination by the Commissioner*

An individual is "disabled" and therefore eligible for SSI if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The individual's

impairment must be severe to the point that the individual cannot engage in his previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(B); *Plummer v. Apfel*, 186 F.3d 422, 427–28 (3d Cir. 1999).

The Commissioner employs a five-step sequential evaluation process for SSI claims. *See generally* 20 C.F.R. § 416.920(a)(4)(i)–(v); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007). The claimant bears the burden of proof for the first four steps of the analysis, and the burden shifts to the Commissioner for the fifth step. *Poulos*, 474 F.3d at 91–92; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

First, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. 20 C.F.R. § 416.920(a)(4)(i), (b). "Substantial gainful activity" is "work activity that involves doing significant physical or mental activities," "usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(a)–(b). Second, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." *Id.* § 416.920(a)(4)(ii). The claimant must have a "medically determinable impairment" or combination of impairments severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months. *Id.* §§ 416.920(a)(4)(ii), 416.909. Third, the Commissioner also considers the "medical severity of [the claimant's] impairment(s)." *Id.* § 416.920(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart P. *Id.* § 416.920(d). The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed

impairment." *Id.* § 416.926(a). If the claimant meets his burden for the first three steps, the claimant is deemed disabled. *Id.* § 416.920(a)(4).

However, if a claimant meets his burden on the first two steps, but fails on the third, the analysis proceeds to the fourth step, where the Commissioner evaluates the claimant's "residual functional capacity" ("RFC") and "past relevant work." *Id.* § 416.920(a)(4)(iv), (e). RFC is the most the claimant can do in a work setting despite his limitations. *Id.* § 416.945(a)(1). The Commissioner "assess[es] [the claimant's] residual functional capacity based on all the relevant evidence in [his] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 416.920(c), 416.921, and 416.923. *Id.* § 416.945(a), (a)(2). The Commissioner assesses RFC based on "all of the relevant medical and other evidence." *Id.* § 416.945(a)(3). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).

If the claimant is deemed incapable of performing his or her past relevant work, the analysis proceeds to the fifth and final step. *See id.* § 416.920(a)(4)(iv)–(v); *Plummer*, 186 F.3d at 428. To be deemed disabled at step five, the claimant must be unable to adjust to other work in light of his RFC, age, education, and work experience. *See id.* § 416.920(g). Before denying a claim at step five, the burden shifts to the Commissioner to show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* § 416.960(c)(2); *see also Poulos*, 474 F.3d at 92.

4

B.  *District Court Standard of Review*

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, the court reviews questions of law *de novo* and questions of fact under a "substantial evidence" standard of review. *See id.*; *Poulos*, 474 F.3d at 91. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhardt*, 326 F.3d 376, 379 (3d Cir. 2003) (citation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted). The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Thus, this limitation on a reviewing court's discretion applies "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III.  DISCUSSION

A.  *Administrative Law Judge's Findings*

At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since July 5, 2016, the application date. (R. at 21 (citing 20 § C.F.R. 416.971 *et seq.*).)

At step two, the ALJ determined that Claimant had the following severe impairments: degenerative joint disease secondary to fracture of the left femur and right ankle, degenerative disc disease, and obesity; and that these impairments "significantly limit the ability to perform basic work activities." (*Id.* (citing 20 C.F.R. § 416.920(c)).)

At step three, the ALJ considered whether Claimant's impairments "me[t] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix

1." (*Id.* (citing 20 C.F.R. §§ 416.920(d), 416.925, and 416.926).) The ALJ considered whether Claimant's degenerative disc disease met the severity in Listings 1.02, major dysfunction of a joint; or 1.04, disorders of the spine. (R. at 21–22.) The ALJ also considered whether Claimant's left femur and right ankle fractures met the severity in Listing 1.06. (R. at 22.) The ALJ determined that neither impairment met the Listings. (*Id.*) The ALJ also concluded that Claimant's obesity did not "singularly or in combination meet any listing when assessing [its] effect on other body functions." (*Id.*)

At step four, the ALJ assessed Claimant's RFC and determined that Claimant had the capacity to perform less than a full range of "sedentary work," as defined by the regulations. (R. at 22–26.)[1] Specifically, the ALJ determined that Claimant could perform "sedentary work" subject to certain limitations:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §416.967(a) except he requires the ability to stand and stretch at the workstation after thirty minutes of sitting and will require the ability to sit for one to five minutes at the workstation after thirty minutes of standing and/or walking. The claimant requires the use of a handheld assistive device when standing or walking. He can occasionally climb ramps and stairs but can never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, and crouch, but can never kneel or crawl. In regard to environmental limitations, the claimant can tolerate up to occasional exposure to humidity, wetness, extreme cold and extreme heat. Lastly, the claimant can never be exposed to unprotected

---

[1] "Sedentary work" involves,

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

6

>heights, hazardous moving mechanical parts or operate a motor vehicle.

(R. at 22–23.) In making this finding, the ALJ considered medical records, opinion evidence, and Claimant's testimony. (R. at 23–26.) The ALJ determined that, while Claimant's medical records indicated that his "severe impairments would limit him to less than a full range of sedentary exertion," they did not indicate that Claimant would be "severely limited in his ability to sit." (R. at 26.) Thus, the ALJ determined that the above formulation of Claimant's RFC "is an accurate representation of the claimant's functional abilities." (*Id.*)

Having determined Claimant's RFC, the ALJ proceeded to step five, where he determined that, considering Claimant's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. at 27 (citing 20 C.F.R. §§ 416.969, 416.969a).) The VE testified that such an individual could perform the requirements of the following representative occupations: (1) Document Preparer (Dictionary of Occupational Titles No. 249.587-018); (2) Order Clerk (Dictionary of Occupational Titles No. 209.567-014); and (3) Preparer, Jewelry-Silver (Dictionary of Occupational Titles No. 700.687-062). (*Id.*) The ALJ determined that the expert's testimony "[was] reasonable and well founded and that his testimony [was] otherwise consistent with the information contained in the DOT [Dictionary of Occupational Titles]." (R. at 27–28.) Based on the VE's testimony, the ALJ concluded that Claimant "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 28.) Thus, the ALJ determined, "[a] finding of 'not disabled' is [] appropriate under the framework of the above-cited rule." (*Id.*)

B.  *Claimant's Arguments on Appeal*

Claimant asserts several arguments on appeal. The Court addresses these in turn.

1.  The ALJ's Evaluation of the Medical Evidence at Step Three

First, Claimant argues that the ALJ improperly evaluated the medical evidence when determining, at step three, that Claimant's left femur and right ankle fractures do not meet the severity of the impairments in Listing 1.06. (Claimant Br. 12–15, ECF No. 12.) The ALJ determined this impairment does not meet or equal the severity of the impairments in Listing 1.06 because the listing "requires that an individual have an inability to ambulate effectively" as defined in 1.00B2b. (R. at 22.)[2] The ALJ determined that Claimant retained the ability to ambulate effectively, based on medical records noting Claimant's ability to ambulate. (R. at 21–22) (citing Exhibit 3F, which are treatment notes between January 31, 2014 through June 18, 2015, noting "he has been ambulating on the right ankle for the past 2 months without pain," and Exhibit 5F, which is an April 7, 2016 medical report, noting that Claimant is "using a cane for ambulation").) The ALJ also noted Claimant's testimony that he uses a cane to walk and carries out some activities for daily living, including attending college. (R. at 21. ("Specifically, although the claimant requires the use of a cane, he does not require the use of a walker, two crutches, or two canes to ambulate.").) Further, the ALJ points to x-rays showing "that the claimant's right ankle and left femur fractures have healed to form solid unions." (R. at 22 (citing Exs. 4F, 5F, and 7F).) The

---

[2] Listing 1.06 lists the severity of impairments for "fractures of the femur, tibia, pelvis, or one or more of the tarsal bones" as: "1) a solid union not evident on appropriate medically acceptable imaging and not clinically solid; and 2) the inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation having not occurred or is not expected to occur within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06. Inability to ambulate effectively is "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 1.00B2b(1). For example, ineffective ambulation includes "the inability to walk without the use of a walker, two crutches or two canes." 1.00B2b(2).

8

referenced exhibits are medical records discussing imaging and noting that the fractures are healed. (*See e.g.*, R. at 393.)

"The ALJ must consider all the evidence and give some reason for discounting the evidence [he] rejects." *Plummer*, 186 F.3d at 429 (citing *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)). Additionally, the ALJ must "set forth the reasons for his decision," *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000), "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120), but he is not required "to use particular language or adhere to a particular format in conducting his analysis," *id.* Here, the ALJ duly considered the evidence, and provided his reasoning for crediting some record evidence over other evidence. (R. at 21-22.) Thus, the ALJ's finding that Claimant's ankle and femur fractures did not meet the severity of impairments in Listing 1.06 is supported by substantial evidence.

### 2. The ALJ's Evaluation of Claimant's Obesity at Steps Three and Four

Second, Claimant asserts that the ALJ failed to properly evaluate his obesity and the combined effects of his obesity with other impairments, as required by Social Security Ruling ("SSR") 02-1p. (Claimant's Br. 15–16.) While obesity itself is not a listed impairment, the ALJ must "consider the effects of obesity not only under the listings [step three] but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's [RFC] [step four]." SSR 02-1P, 2002 WL 34686281, at *1 (S.S.A. Sept. 12, 2002). "[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with [the claimant's] impairments, on [the claimant's] workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In *Diaz*, the ALJ determined that the claimant's obesity was a "severe" impairment at step two, and that the

9

claimant's impairments or combination of impairments did not meet or medically equal any of the listings at step three. *Id.* at 502.[3] There, the claimant's other severe impairments included diabetes, hypertension, asthma, back disorder, degenerative joint disease of the knee, and adjustment disorder. *Id.* at 502. In determining that the claimant's impairments did not meet a listing, the ALJ cited to medical reports of doctors who were aware of the obesity. *See id.* at 502, 504.

The Circuit reversed the district court's affirmance of the ALJ's decision and vacated and remanded the matter to the ALJ for re-evaluation of the claimant's obesity. *Id.* at 504–505. In doing so, the Circuit found, "the District Court's critical determination — that the ALJ's citation of reports by doctors who were aware of [the claimant's] obesity sufficed — was error." *Id.* Rather, "an ALJ must clearly set forth reasons for his decision," and "provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." *Id.* (quoting *Burnett*, 220 F.3d at 120) (citing *Jones v. Barnhart*, 364 F.3d at 505 & n.3). Specifically, where the ALJ "determined . . . that [the claimant's] obesity constituted a severe impairment," the Circuit required "analysis of the cumulative impact of [the claimant's] obesity and other impairments on [the claimant's] functional capabilities." *Id.* Thus, the Circuit remanded because the ALJ's "summary conclusion omitted any explanation and reasoning," and "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Id.*

Similarly here, the ALJ determined at step two that Claimant's obesity was a "severe impairment." (R. at 21.) When analyzing obesity at step three, however, the ALJ did not point to

---

[3] In *Diaz*, the Third Circuit considered SSR 00-3p, which was superseded by SSR 02-1p. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009). The Circuit also noted that SSR 02-1p "did not materially amend SSR 00-3p." *Id.* Thus, the analysis in *Diaz* is instructive here.

10

evidence in the record to analyze the "cumulative impact of [Claimant's] obesity" with respect to the listings. *See Diaz*, 377 F.3d at 504; (R. at 22.) Rather, the ALJ states,

> I have evaluated the impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 02-1p . . . I have fully considered obesity in the context of all of the listings considered for the claimant's other body systems. I find that the claimant's obesity does not singularly or in combination meet any listing when assessing [its] effect on other body functions. Therefore, I find that the claimant's obesity does not meet any listing.

(R. at 22.) The ALJ did not point to the record to support this conclusion and thus, the Court cannot review whether this determination is supported by substantial evidence. *See Diaz*, 377 F.3d at 504.

In *Diaz*, the Circuit noted that a discussion of obesity was particularly important when the claimant's other impairments involved "joint dysfunction, mobility, and musculoskeletal function." *See id.* (noting that the claimant's "morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis") (citing *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (discussing the interplay between a claimant's obesity and arthritis)). Here, Claimant asserts that his impairments are similar to the interplay between obesity and arthritis because his impairments, when considering obesity, may affect a "weight bearing joint" more than his impairments without considering obesity. (Claimant Br. 15.) Although the ALJ notes he considered Claimant's obesity in combination with the listings, there is no reference to the record to permit this Court to conclude that the finding was supported by substantial evidence in the record. *See Diaz*, 577 F.3d 504–505.[4]

---

[4] In its Opposition, the Commissioner cites Claimant's treatment records, noting that Claimant "received no specific obesity-related work restrictions from any physician" and "was given dietary and exercise advice." (Comm'r Opp'n 13, ECF No. 14 (citing R. at 25, 368, 372, 375, and 413). The ALJ, however, did not point to record evidence to support his conclusion that Claimant's obesity did not meet any listing at step three, either singularly or in combination with his other impairments. (*See* R. at 22.) *See Demarco v. Kijakazi*, 2022 WL 3227263, at *8 (D.N.J. Aug. 10, 2022) (affirming the ALJ's determination that the claimant's impairments did not meet any listings

11

Thus, the Court vacates the ALJ's determination that Claimant's impairment or impairments did not meet or medically equal Listings 1.02, 1.04, and 1.06, and remands the matter to the ALJ for references to evidence in the record demonstrating his consideration of Claimant's obesity in combination with his other impairments to determine whether he met a listing at step three.

In evaluating Claimant's obesity at step four, however, the ALJ points to substantial evidence to support the RFC assessment. (*See* R. at 25.) In the RFC assessment, the ALJ cites medical records noting Claimant's BMI from the years 2014 through 2018, as well as a progress note regarding the need for Claimant to lose weight. (*Id.* (citing Exhibits 4F, 2F, 8F, 9F, and 6F).) The ALJ determined, based on the medical evidence regarding obesity, that Claimant's "obesity is a severe impairment reasonably expected to increase the severity and functional limitations associated with the claimant's other impairments," which "were considered and accounted for in the residual functional capacity formulated." (*Id.*) Thus, the ALJ sufficiently analyzed the impact of Claimant's obesity in the RFC assessment.

### 3. The ALJ's RFC Assessment

Third, Claimant asserts that the ALJ erred because the "RFC assessment is simply conclusory and does not contain any rationale and reference to the supporting evidence, as required by SSR 96-8p." (Claimant Br. 21.) SSR 96-8p requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and

---

at step three when the ALJ considered medical records of the claimant's obesity at this step and found "the signs, symptoms and laboratory findings of his obesity are not of such severity as found in any listing"). The ALJ's consideration of record evidence on Claimant's obesity in conjunction with these impairments is particularly important because step three may be outcome-determinative, *i.e.*, a finding that Claimant's impairment(s) meet or medically equal one of the listings could result in a finding of "disabled" and entitle him to SSI benefits.

12

nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). It also requires the ALJ to explain "how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (noting that an ALJ should analyze the evidence, explain the weight given to "obviously probative exhibits," and give "some indication of the evidence that was rejected") (citations and quotation marks omitted). The Court need not "use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120); *see also Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) (affirming an ALJ's RFC assessment, despite the fact that "the ALJ did not make a task by task analysis," because the RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and . . . assessed what [the claimant] could reasonably do").

Here, the ALJ provides the narrative discussion required by SSR 96-8p. He discusses Claimant's alleged symptoms and testimony (R. at 23), injuries (R. at 23–25 (citing to medical records from 2014 through 2018)), and obesity (R. at 25) (citing medical records regarding Claimant's BMI and other advice he received regarding weight loss)). The ALJ cites opinion evidence regarding Claimant's "functional limitations," (R. at 25 (citing Exhibits 1A and 3A)), noting the differences between the opinions and explaining the weight given to each one, (*see* R. at 26.) For example, the ALJ notes that he gave more weight to Dr. Goldbas than Dr. Paolino because Dr. Paolino opined that Claimant should stand and walk for three hours per day, but "the clinical evidence of record show that claimant's degenerative disc disease, specifically of the right ankle," precludes that much walking or standing. (*Id.*) (citing Exhibits 1F, 3F, 4F, 5F, and 7F).) The ALJ further notes that he gave less deference to both Drs. Goldbas and Paolino because

13

"neither consultant had the opportunity to examine the claimant or review the evidence received after their file review was complete." (*Id.*)

"When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir 1993)). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id.* (citing *Newhouse v. Heckler*, 753 F.2d 283 (3d Cir. 1985)). Here, the ALJ sufficiently analyzed the evidence, "explained the weight he [gave] to obviously probative [evidence]," and gave "some indication of the evidence that was rejected." *See Cotter*, 642 F.2d at 705; (R. at 23–25.)

Additionally, Claimant argues that the ALJ erred in the RFC assessment by finding that Claimant's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Claimant's Br. 17.) When considering subjective complaints of pain, the ALJ first looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. *See Mason*, 994 F.2d at 1067–68; *Gross v. Comm'r Soc. Sec.*, 653 F. App'x 116, 119 (3d Cir. 2016); *see also* 40 C.F.R. § 404.1529(c)(3). Next, the ALJ evaluates the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work on a regular and continuing basis. *See Gross*, 653 F. App'x at 118–19. This determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects. *See id.* at 119; *see also* 40 C.F.R. § 404.1529(c)(4).

14

Here, the ALJ found that Claimant's medical impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. at 23.) Specifically, the ALJ concluded that these statements were inconsistent because the records did not indicate that Claimant would be "severely limited in his ability to sit." (R. at 26.) Substantial evidence supports this conclusion. Claimant does not point to medical records that indicate a severe inability to sit. (*See* Claimant Br. 23–24.) The records do not otherwise indicate a severe inability to sit. (*See, e.g.*, R. at 71–72 (expert report indicating Claimant's ability to sit for about six hours per day); R. at 395–97 (2017 medical report noting Claimant's complaints with pain "mostly with weightbearing," and not otherwise indicating inability to sit).) Moreover, at the time of the hearing, Claimant was attending graduate school and attending classes three times per week for one to two hours, and was on campus from 10am through 5:30pm. (R. at 41–42.) The ALJ's conclusion that Claimant's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the records, and in turn, his conclusion regarding Claimant's limitations caused by his symptoms, is supported by substantial evidence. (R. at 26.)

4. The ALJ's Assessment at Step Five

Finally, Claimant asserts that the ALJ improperly found that there are a significant number of jobs in the national economy for someone of Claimant's age, education, work history, and RFC. (Claimant Br. 25–26.) Claimant argues that a "finding of disability is ordinarily warranted" because Claimant's "reduction in exertional capacity is substantially reduced," *i.e.*, less than sedentary. (*Id.* at 21.) At step five, the Commissioner must "show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the

15

claimant's age, education, work experience, and residual functional capacity." *Poulos*, 474 F.3d at 92. "A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the ALJ first notes, because Claimant's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations[,] . . . [he] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (R. at 27; *see also* R. at 63–64.) The ALJ notes three jobs, relying on responsive testimony from the VE. (*Id.*) The Court has already determined that the ALJ properly evaluated Claimant's RFC. Thus, this testimony sufficiently reflected Claimant's impairments and the VE demonstrated that there are jobs existing in significant numbers in the national economy for Claimant. *See Cruz-Santos v. Callahan*, 1998 WL 175936, at *6 (D.N.J. Apr. 7, 1998) (finding that the ALJ properly "relied upon the vocational expert's determination that significant jobs remained in the national and local economies under the classification that [the claimant] could perform"). Thus, the Court affirms the ALJ's decision as to step five, as supported by the evidence provided by the vocational expert.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision shall be affirmed in part and remanded in part. An appropriate Order follows.

## ORDER

Accordingly, for the foregoing reasons,

**IT IS**, on this 11th day of October, 2022,

**ORDERED** that the decision of the Commissioner in this matter is hereby **AFFIRMED IN PART AND VACATED AND REMANDED IN PART**; and it is further

**ORDERED** that the decision of the Commissioner in this matter shall be **VACATED AND REMANDED** for the Commissioner to consider Claimant's obesity when determining whether the Claimant's impairments meet the severity of the impairments in Listings 1.02, 1.04, and 1.06; and it is further

**ORDERED** that the decision of the Commissioner in this matter shall be otherwise **AFFIRMED**.

*[signature]*
**GEORGETTE CASTNER**
**United States District Judge**